# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| N.W.,[1] *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-0573 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 12, 18, 27, 30, 31 |
| | : | | |
| THE DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT PLAINTIFFS' MOTION TO PLACE CASE IN ABEYANCE; DENYING PARTIES' MOTION FOR SUPPLEMENTAL BRIEFING; DENYING PLAINTIFFS' MOTION FOR SUPPLEMENTAL BRIEFING

## I.  INTRODUCTION

J.W., a student, and his parents[2] (Plaintiffs) filed this action against the District of Columbia (the District) challenging a hearing officer's determination that J.W. was not denied a free and appropriate public education (FAPE) pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* Both parties filed cross-motions for summary judgment. The Court agrees that J.W. was denied a FAPE because his IEP contained insufficient specialized instruction and the District did not identify a school capable of implementing the IEP. However, the Court rejects Plaintiffs' other arguments and will thus grant in part and deny in part Plaintiffs' and the District's motions.

---

[1] There are multiple plaintiffs in this case. The Court conforms its caption to the caption reflected in ECF, rather than its past practice in this case. This alteration does not reflect any substantive change.

[2] The Court permitted Plaintiffs to proceed anonymously in this action pursuant to Rule 5.2 of the Federal Rules of Civil Procedure and Local Civil Rule 5.1(h). *See* Order, ECF No. 13.

## II.  BACKGROUND

### A.  Statutory Framework

The IDEA provides that "every child with a disability in this country is entitled to a 'free appropriate public education,' or FAPE." *Leggett v. District of Columbia*, 793 F.3d 59, 62 (D.C. Cir. 2015) (quoting 20 U.S.C. § 1400(d)(1)(A)). "A free appropriate public education entitles 'each child with a disability' to an 'individualized education program' that is tailored to meet his or her unique needs." *Henry v. District of Columbia*, 750 F. Supp. 2d 94, 96 (D.D.C. 2010) (quoting 20 U.S.C. §§ 1414(d)(1)(A)–(2)(A)).

An individualized educational program (IEP) is the "primary vehicle" for implementing the IDEA. *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 830 (D.C. Cir. 2006) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). The public school district develops the IEP in collaboration with the student's teachers and parents. *Id.* The IEP "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Id.* (quoting *Honig*, 484 U.S. at 311). When parents disagree with the school district and believe that the IEP does not provide their child with a FAPE, they first challenge the IEP through an "impartial due process hearing" in front of a hearing officer. 20 U.S.C. § 1415(f). The hearing officer has access to a variety of remedies. If the parents or the District disagree with the outcome of the due process hearing, either may appeal the determination to state or federal court. *See id.* § 1415(i)(2).

### B.  Factual Background

J.W. is a student residing in the District of Columbia who has been diagnosed with Autism Spectrum Disorder and Specific Learning Disorders in reading, math, and writing, as

well as learning delays in speech. Compl. ¶ 6, ECF No. 15-1; Administrative Record (AR) 217.[3] During kindergarten and first grade, J.W. attended Key Elementary School, a public school run by the District. AR 204–05. The District recognized that J.W. was eligible for services under the IDEA, and developed an IEP for him. During these years, Plaintiffs became concerned that the District was not providing J.W. with adequate services and eventually rejected the District's proposed May 2014 IEP "because it [was] based on inadequate information and [was] not sufficient to meet [J.W.'s] needs." AR 282.

For the 2014–2015 school year—or J.W.'s second grade—Plaintiffs placed J.W. at Katherine Thomas School (KTS), a private school offering special education services. *See* AR 427, 1109. During that year the District continued to revise J.W.'s IEP and issued revised IEPs in June and September of 2014.[4] Plaintiffs challenged the three 2014 IEPs in a due process hearing held in April and May of 2015. AR 611–24. The hearing officer rejected two of Plaintiffs' objections: first, that the IEPs improperly referred to J.W.'s Autism Spectrum Disorder but not his other learning disabilities, AR 618–19; and second, that J.W. was placed at a public school, AR 621–22. However, the hearing officer did conclude that the 2014 IEPs denied J.W. a FAPE because they "lack[ed] a sufficient type and amount of specialized instruction to meet the student's identified needs." AR 620. As a result, the hearing officer ordered the District to reimburse Plaintiffs for J.W.'s KTS tuition during the 2014–2015 school year, and ordered the District to create a new IEP for J.W. providing him with "full time special education services." AR 622.

---

[3] Citations to the Administrative Record use the page numbers at the bottom left corner of each page, which span from 1 to 1557.

[4] For example, the IEP proposed at the June 12, 2014 meeting called for 7 hours per week of services in reading and math outside the general education setting, as well as instruction in speech–language pathology and behavioral support services. AR 270.

The District continued to engage in the IEP process, resulting in the July 2015 IEP at issue here. That IEP called for 24.5 hours per week of "specialized instruction" and an additional 4 hours a month each of instruction in speech–language pathology, behavioral support services, and occupational therapy. AR 649. The setting for all of these services was "[o]utside [g]eneral [e]ducation." AR 649. The IEP did not provide for any instruction or specialized supports during lunch or recess, *see* AR 649, 1120, although the District told the Plaintiffs during the IEP meeting that it would provide supports during lunch and recess regardless of the text of the IEP, AR 960, 1120. About a week after the IEP was completed, the District informed Plaintiffs that they could select between two public schools operated by the District as the location of services for J.W.—Hearst Elementary School and Barnard Elementary School. AR 676.

Plaintiffs investigated the programs at Hearst and Barnard[5] and identified problems with each. Plaintiffs learned that neither school offered "self-contained specials." AR 740, 1125–26. A "special" is non-academic instructional time such as music or physical education, AR 1162, and a "self-contained" class is one with only special education students, usually a small group. At Barnard, instead of self-contained specials, all special education students attend their specials with general education students and receive additional support during the specials. AR 740.

---

[5] Plaintiffs and their educational consultant spoke with staff at Hearst and Barnard by phone in August of 2015. AR 8. Also in August, Plaintiffs filed a due process hearing request for the July 2015 IEP. AR 681–85.

On September 21, 2015, Plaintiffs and their educational consultant visited Barnard. AR 8; 740. Plaintiffs attempted to visit Hearst with their educational advocate in October, but were told that their educational advocate could not attend because the school "cannot allow anyone who is not the parent/guardian and has been named as a potential witness to a due process hearing to observe our students." AR 9; AR 744. It appears that no visit to Hearst was ever made.

Barnard offered to provide J.W. with specials either in with the general education population and supports, or *alone*.[6] AR 1249.

Plaintiffs challenged the appropriateness of the 2015 IEP through a second due process hearing. AR 681–85. The hearing officer concluded that the District did not deny J.W. a FAPE, and rejected Plaintiffs' arguments concerning (1) the lack of supports during lunch and recess in the IEP, (2) the lack of self-contained specials at either school, (3) the District's failure to propose specific placement schools at the IEP meeting and (4) the exclusion of Plaintiffs' educational advocate from touring Hearst. AR 4–14. Plaintiffs appealed each of these determinations to this Court, and both parties moved for summary judgment.[7] *See generally* Pl.'s Mot. Summ. J. (Pl.'s Mot.), ECF No. 16-1, Dist.'s Opp'n & Cross Mot. Summ. J. (Dist.'s Mot.), ECF No. 18.[8]

---

[6] Based on the August phone call with Barnard, Plaintiffs had formed "the impression that they could not do" either self-contained or individual specials. AR 8; AR 1249 (testimony of J.W.'s mother). However, while on the site visit to Barnard on September 21, Plaintiffs "were told they could do specials" but J.W. "would be probably the only child." AR 8; AR 1249.

[7] Plaintiffs also moved to place the case in abeyance pending the decision of the United States Supreme Court in *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*. Mot. Place Case in Abeyance, ECF No. 27. The Supreme Court has since issued its decision. *See generally Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988 (2017). Subsequent to that decision, the parties moved for supplemental briefing, *see generally* Joint Motion for Supplemental Briefing, ECF No. 30, and the Plaintiffs moved to extend the proposed deadlines for supplemental briefing, *see generally* Plaintiffs' Motion for Supplemental Briefing, ECF No. 31. This Court has considered the Supreme Court's decision in its resolution of these motions, and does not believe further briefing from the parties would be helpful. Plaintiffs' request that this case be held in abeyance is thus denied as moot and the motions for supplemental briefing are denied.

[8] ECF Nos. 18 and 19 contain the same document, the District's combined opposition and cross-motion for summary judgment.

### III.  LEGAL STANDARD

The IDEA provides that a court reviewing a due process hearing "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); *see also* 34 C.F.R. § 300.516(c). During the district court's review of the due process hearing, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *D.R. ex rel. Robinson v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009). "Where, as here, neither party submits additional evidence for the court's review, 'the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'" *Q.C-C. v. District of Columbia*, 164 F. Supp. 3d 35, 44 (D.D.C. 2016) (quoting *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997)). This procedure is akin to "a bench trial based on a stipulated record." *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012) (internal citation omitted).

Because the district court may hear additional evidence and decides at the preponderance of the evidence standard, the D.C. Circuit has held that "less deference than is conventional in administrative proceedings" is appropriate. *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (internal quotation marks and citation omitted). However, the court must afford "due weight" to the administrative proceeding and avoid "substitut[ing] [its] own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).

# IV. ANALYSIS

Plaintiffs appeal each of the hearing officer's four determinations, which concluded that the District did not fail to provide a FAPE by: (1) issuing an IEP containing insufficient specialized instruction, especially at lunch and recess, (2) failing to identify any schools capable of implementing J.W.'s IEP, (3) waiting a week after the IEP meeting to identify a location for services, and (4) excluding J.W.'s educational advocate from Hearst. The Court considers each issue in turn, after first considering whether this case is moot.

## A. Mootness

As a preliminary matter, the District argues that the complaint should be dismissed as moot because it seeks a determination about the 2015–2016 school year—which has already passed— for which the District paid for J.W. to attend KTS. Dist.'s Mot. at 5–6. However, the Court concludes that this case is not moot because some of Plaintiffs' claims for relief remain available, and the parties' dispute over the 2015–2016 IEP is capable of repetition yet evading review.

The doctrine of mootness prevents courts from adjudicating cases when "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (internal quotation marks and citations omitted), because "the courts of the United States, pursuant to Article III of the Constitution, have no jurisdiction to act unless there is 'a case or controversy,'" *True the Vote, Inc. v. IRS*, 831 F.3d 551, 558 (D.C. Cir. 2016). *See generally* U.S. Const. art. III, § 2. "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *K.B. v. District Columbia*, No. 13-0649, 2015 WL 5191330, at *8 (D.D.C. Sept. 4, 2015) (quoting *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)).

First, Plaintiffs seek certain relief that is clearly not moot. For example, Plaintiffs seek, *inter alia*, that the Court "[o]rder [the District] to place and fund J.W[.] at [KTS] and declare it to be his current educational placement under the IDEA." Compl. at 27, ECF No. 15-1. The Court could grant Plaintiffs this prospective relief, and the case is thus not moot. *See K.B.*, 2015 WL 5191330, at *8 (finding that, although some of the plaintiff's claims were moot, "effectual relief remains available in the form of an order requiring DCPS to fund [the student's] final year of tuition . . . The case is therefore not moot").

Furthermore, the dispute over the 2015–2016 IEP is not moot—even though that school year has now elapsed—because it falls into the exception for "cases that are capable of repetition, yet evading review." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam). These "exceptional situations" occur when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (internal quotation marks and citations omitted).

Here, both factors are satisfied. First, a new IEP is typically created every year, yet administrative review and proceedings in district court will typically take more than a year. Second, the dispute is likely to recur because J.W. will remain eligible for services under the IDEA and Plaintiffs and the District have adopted disparate views of the IDEA's requirements. The Supreme Court concluded in a case concerning the IDEA's predecessor that the district court correctly reviewed an IEP "after the school year had ended and before the school administrators were able to develop another IEP for subsequent years" because "[j]udicial review invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearings. . . . [therefore the] alleged deficiencies in the IEP were

capable of repetition as to the parties before it yet evading review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 186 n.9 (1982); *see also, e.g., Jenkins v. Squillacote*, 935 F.2d 303, 307–08 (D.C. Cir. 1991) ("[T]here can be no doubt that a one-year placement order under the IDEA is, by its nature, too short [in duration] to be fully litigated prior to its . . . expiration. . . . [The dispute between the parties] is reasonably likely to be a recurring legal question . . . . Given that [the student] is only seven years old and that he will remain eligible for public educational services under the IDEA for at least the next 11 years, we find a 'reasonable expectation' that the District may again attempt [the subject of the dispute]."" (internal quotation marks and citations omitted)); *Zearley v. Ackerman*, 116 F. Supp. 2d 109, 112 (D.D.C. 2000) ("[The student] is eligible to receive educational placements under IDEA until his 21st birthday, and there is therefore a 'reasonable expectation' that [he] and his parents will be subject to the same action again.").

The Court notes that, in appropriate circumstances, the development of a new IEP may render a challenge to a prior IEP moot, for example, when the new IEP resolves the previous subject of dispute. *See, e.g., Bowling v. District of Columbia*, No. 11-2145, 2013 WL 5214948, at *4 (D.D.C. Sept. 16, 2013) ("[S]uch claim has been rendered moot by. . . Plaintiff's agreement with the IEP for the 2012–13 school year . . ."); *Turner v. District of Columbia*, No. 12-1943, 2013 WL 3324358, at *6–7 (D.D.C. July 2, 2013) (finding a claim was moot when the new IEP addressed the plaintiff's objection to the previous IEP). However, the record here does not demonstrate the development of a new IEP, much less show that any new IEP settles the parties' disagreement.[9]

_____

[9] Although the District argues in a cursory fashion that "the student has a new IEP and a new location of services, which have replaced the IEP and location of services challenged in this litigation," it identifies nothing in the record to support this assertion. Dist.'s Mot. at 6. As discussed above, in order to show that this challenge is moot the District must show not only that a new IEP has been developed but that it resolves or avoids the issues of dispute here.

The Court therefore concludes that the dispute regarding the 2015–2016 IEP is not moot because the contested issues are likely to recur, yet would otherwise evade review. Plaintiffs' request that the District "reimburse plaintiffs for the tuition expenses and costs incurred in enrolling J.W[.] at [KTS] for the 2015–2016 school year," Compl. at 26–27, however, is moot to the extent that the District has already paid the 2015–2016 tuition. Dist.'s Mot. at 15, ECF No. 18. The Court thus turns to each of Plaintiffs' challenges to the IEP.

## B.  The Specialized Instruction Provisions in the IEP

Plaintiffs appeal the determination of the hearing officer that the District did not "den[y] the student a FAPE or free appropriate public education by failing to propose . . . an IEP that includes a sufficient amount of specialized instruction." AR 1065. Plaintiffs object because the IEP omits any description of services during the lunch or recess period. Pl.'s Mot. at 20–28.

As a preliminary matter, the Court must determine whether the correct yardstick for measuring the proposed services is the text of the IEP or the District's oral assurances. The text of the IEP does not provide for any lunch or recess services, *see* AR 649, but the District has orally represented, including at the IEP meeting, that it would provide such services, AR 1120; *see also* AR 960 (stating in the IEP meeting notes that J.W. "will have the support of a paraeducator as well as other supports that are deemed necessary" during lunch).

 "In evaluating whether a school district offered a FAPE, a court generally must limit its consideration to the terms of the IEP itself." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 72 (D.D.C. 2010) (citing *A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 682 (4th Cir. 2007)). Multiple jurisdictions have recognized that the IDEA supports focusing on the written document to create a clear record and reduce factual disputes. *See, e.g.*, *A.K. ex rel. J.K.*, 484 F.3d at 682; *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 768 (6th

Cir. 2001); *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1526 (9th Cir. 1994); *see also* 20 U.S.C.

§ 1415(b)(3) (2004). In order to serve these purposes of the IDEA, the Court therefore will

consider the text of the IEP in order to encourage clarity and reduce factual disputes.[10] Because

the IEP does not contain any lunch or recess services,[11] the Court must next determine whether

that omission would deprive J.W. of a FAPE.

The hearing officer assessed the adequacy of the services provided to J.W., apparently

*sans* lunch and recess supports, and concluded that J.W. would receive a FAPE. AR 12

("Student's IEP would have been more complete if it indicated Student's need for social skills

support during lunch and recess. However, the IEP does not fail to meet the *Rowley* standard, in

that it would permit Student to benefit educationally from his instruction."). However, the

District has never advanced the argument that the hearing officer apparently accepted—that J.W.

would be provided a FAPE without any support at lunch or recess. Nor does any of the evidence

in the record support that conclusion. Indeed, the record of the due process hearing demonstrates

that IEP team members agreed that J.W. required supports during lunch and recess, and this

---

[10] It appears that the District agreed that lunch and recess services were appropriate at the IEP meeting—and asserted that it would provide such services—but simultaneously refused to memorialize that understanding in the IEP. *See* AR 1120; AR 8 ("Student's IEP team . . . reached general consensus on the fact that Student needed support during lunch and recess. However, they disagreed as to whether the time Student would spend in lunch and recess needed to be reflected as service hours on his IEP . . ."). Where, as here, the District's oral and written promises differ, parents are placed in a difficult position. It would be no more prudent for Plaintiffs to rely on the District's oral promises, despite its refusal to reduce these promises to writing, than for an ordinary consumer. The Court is concerned that the District's policies appear to subject parents to such a Hobson's choice.

[11] The Court disregards the District's new argument in its reply that "[both] parties understood the IEP to provide special education services at lunch and recess when they drafted the IEP." Dist.'s Reply Supp. Mot. Summ. J. at 3, ECF No. 26; *see also Lewis v. District of Columbia*, 791 F.Supp.2d 136, 139 n.4 (D.D.C. 2011) ("[I]t is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief." (quoting *Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F.Supp.2d 1, 12 n.5 (D.D.C. 2008))).

seems to be the District's position before this Court. AR 1119–1120; *see also* AR 1180, 1205 (Plaintiffs' expert testified that "one of the reasons why [J.W.] has made so much progress socially is because he has [] supports" and that "[i]f left to his own devices, [J.W.] does not choose to participate" and thus needs "full-time special education support from the minute he walked in the door to the minute he got on the bus"); AR 1358 (the District's expert agreed that J.W. "needed support during lunch and recess"). The hearing officer's findings are thus entitled to less deference because they do not appear to be based on the evidence. *See Q.C-C. v. District of Columbia*, 164 F. Supp. 3d 35, 52 (D.D.C. 2016) (quoting *Reid*, 401 F.3d at 521). This Court thus disagrees with the hearing officer and concludes that denying J.W. lunch and recess supports would deny him a FAPE. The preponderance of the evidence, as seen in the testimony of both Plaintiffs' and the District's witnesses, indicates that J.W. requires support at lunch and recess.

In response, the District argues that its omission of lunch and recess supports from the IEP should have been evaluated as a procedural error and subject to a harmlessness analysis. *See* Dist.'s Mot. at 6–9, ECF No. 18. However, the omission of lunch and recess supports is not a procedural error. Missed deadlines present the classic example of a procedural violation of the IDEA. *See, e.g.*, *Kruvant v. District of Columbia*, 99 Fed. App'x 232, 233 (D.C. Cir. 2004) (holding that failure to assess the student for IDEA eligibility within the statutory deadline of 120 days after the parents' request was a procedural error); *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) (treating an alleged failure to evaluate a student within the statutory deadline as a procedural error). In this case, the problem is the services that Plaintiffs were actually offered in the IEP rather than the procedural method that the District used to offer them. *See Joaquin v. Friendship Pub. Charter Sch.*, No. 14-1119, 2015 WL 5175885, at *7 (D.D.C. Sept. 3, 2015) ("[T]here is no basis for the hearing officer's conclusion

that [the defendant's] failure to provide transition services was a mere 'procedural violation' of the IDEA."); *A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 679 n.7 (4th Cir. 2007) ("[B]ecause we view this claim as an alleged deficiency in what [the defendant] was offering rather than in the procedure by which the offer was developed or conveyed, we consider the alleged violation to be substantive." (citing *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 767–70 (6th Cir. 2001))). Moreover, the District's argument on harmlessness would vitiate the IDEA's IEP requirement by leaving parents no recourse for an inadequate IEP as long as the school had orally "offered" to provide more robust services.

Even if the omission of lunch and recess services from the IEP was a procedural error, Plaintiffs would still prevail on a harmlessness analysis because they were deprived of substantive rights under the IDEA. As previously discussed, the District's strategy of refusing to incorporate its oral representations into the IEP impedes parents' ability to make informed choices about the services that their children will actually receive. Parents may reasonably fear that the District's oral promises will prove to be illusory. A court in this jurisdiction reached the same conclusion in *N.S.*, identifying a violation of the parents' substantive rights where the written IEP "failed to adequately describe the services that would be provided . . . [and] forced Plaintiffs to make a decision about [the student's] placement based on inadequate and contradictory information." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 72–73 (D.D.C. 2010). Although that court concluded that some of the violations may have been procedural, it found that the plaintiffs had been deprived of their substantive rights because the "[p]laintiffs cannot be penalized for refusing to rely on a hope that appropriate services would be provided . . . . One of the purposes of the IEP is to ensure that the services provided are

formalized in a written document that can be assessed by parents and challenged if necessary." *Id.* at 73.

### C. The Schools' Ability to Implement the IEP

Plaintiffs also appeal the hearing officer's finding that the District did not "den[y] the student a FAPE by failing to propose a location of services that can implement his IEP." AR 1067. Plaintiffs dispute that either Barnard or Hearst could provide J.W. the self-contained specials which they argue his IEP requires. Because the individual instruction available at Barnard would not help J.W. progress in the broader context of his IEP goals for social interaction, the Court agrees with Plaintiffs.

The IDEA requires school districts to "offer[] placement in a school that can fulfill the requirements set forth in [the student's] IEP" *O.O. ex rel. Pabo v. District of Columbia*, 573 F. Supp. 2d 41, 53 (D.D.C. 2008). The school need not perfectly satisfy the IEP, but cannot commit a material failure, or leave "more than a minor discrepancy between the services a school provides to a disabled child and the services required by that child's IEP." *James v. District of Columbia*, No. 14-02147, 2016 WL 3461185, at *5 (D.D.C. June 21, 2016) (citing *Holman v. District of Columbia*, 153 F. Supp. 3d 386, 389–90 (D.D.C. 2016)).

Here, J.W.'s IEP called for 24.5 hours per week of specialized instruction in a "small group or individual setting" that is "inside or outside the general education setting."[12] AR 650. The IEP also called for a total of 8 hours a month of instruction in speech-language pathology

---

[12] In what appears to be an error, the entry for "Specialized Instruction" duplicates the language of the entry for speech–language pathology and states that the choice of whether the instruction should be provided inside or outside the general education setting should be made by the student's "treating speech–language pathologist." AR 650. However, the question of which person determines whether the specialized instruction takes place inside or outside of the general education setting is not at issue in this case.

and behavioral support services in a "small group or individual setting," and 4 hours a month of occupational therapy in an unspecified setting. AR 650. These combined programs total to 27.5 hours a week, which the District considers to be a full-time IEP.[13] *See* AR 1143, 1203–04. Plaintiffs object only to the subset of those 27.5 hours dealing with specials (electives such as art, music, and physical education). *See* AR 1125, 1128. The record does not indicate how many hours a week J.W. would spend in specials. According to Plaintiffs, J.W. requires specials that are "self-contained" in a small group of other special education students.

The 2015 IEP's requirements are fleshed out by its discussion of J.W.'s need for additional support in social interactions with peers. Several of J.W.'s goals in the 2015 IEP involve peer interaction. For example, the 2015 IEP calls for J.W. to "increase reciprocal social interactions with peers," AR 634, 644, and also included specific goals for J.W. to "participate in reciprocal conversation for at least 2 exchanges with peers 2 times weekly in counseling sessions," AR 645, and "initiate a greeting and respond to social interactions from peers and initiation by adults" at least once a day, AR 646.

The District offered Plaintiffs their choice of two schools—Barnard and Hearst. The District does not contest Plaintiffs' assertion that Hearst "has chosen not to offer self-contained electives" and instead "[a]ll students go to specials with general education students." AR 717; Pl.'s Mot. at 30; Def.'s Mot. at 9–10. Because sending all students to specials with general education students is incompatible with the plain language of J.W.'s IEP, which requires a small group or individual setting for all of J.W.'s instructional time, the Court finds that Hearst cannot implement J.W.'s IEP. The Plaintiffs' claim therefore hinges on whether Barnard could implement J.W.'s IEP.

---

[13] The 27.5 hours a week excludes lunch and recess. *See* AR 1366.

Barnard also does not offer self-contained specials. However, Barnard offered to place J.W. in *individual* specials instead.[14] AR 1249, 1130; Pl.'s Mot. at 30; Dist.'s Mot. at 9–10. However, as Plaintiffs note, this "class of one" would not be capable of advancing J.W.'s social interaction goals. ECF No. 16-1 at 32 (arguing that it would clearly be inappropriate for "a student whose IEP requires him to work on things such as conversations with peers and emotional/social development" to "be the only student in classes such as art, music, and physical education").

The hearing officer and the District both place undue reliance on the "individual setting" of J.W.'s IEP, rather than reading it in the context of the other portions of the IEP. The hearing officer concluded, in a single paragraph, that Barnard could implement the IEP. Although the hearing officer was "concern[ed]" about the individual specials, she found that that option "complie[d] with the letter of [J.W.'s] IEP."[15] AR 13. The hearing officer did not rely on any evidence in the record addressing the suitability of individual specials, and this Court is aware of none. Indeed, one of the District's witnesses at the due process hearing testified that an individual special class would be inappropriate socially and "wouldn't be ideal."[16] AR 1475–77.

---

[14] Because the individual specials offered at Barnard would not suffice, the Court need not address the timing of Barnard's offer. However, although the record in this case does not clearly establish when Plaintiffs learned that Barnard would offer individual specials, or if that event preceded their decision on where J.W. would attend school, the Court is sympathetic to Plaintiffs' concern that they needed to know what services would be offered at the time of that decision. *See* Pl.'s Mot. at 32. Plaintiffs in IDEA cases will face a difficult decision if the District delays explaining what services it will actually offer, and that uncertainty could impede students' ability to access the services to which they are entitled.

[15] Her concerns were apparently alleviated because Barnard also offered to send J.W. to specials with general education students and additional support, which she concluded was "more in line with the spirit of [J.W.'s] IEP" and "not . . . a substantial or significant deviation" from the IEP. AR 13 (internal quotation marks and citation omitted). The District does not now argue that J.W. could be placed in general education for specials, even with support.

[16] The same witness also noted that individual instruction is common for occupational therapy or adaptive physical education. AR 1475. Given that those separate categories of

16

When the hearing officer's determination does not contain "reasoned and specific findings" it "deserves little deference." *Kerkam ex. rel Kerkam v. Superintendent, D.C. Pub. Sch.*, 931 F.2d 84, 87 (D.C. Cir. 1991) (internal quotation marks omitted); *cf. Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017) (noting that "deference is based on the application of expertise and the exercise of judgment by school authorities" and that "[b]y the time any dispute reaches court . . . [a] reviewing court may fairly expect those authorities to be able to offer a cogent and responsive explanation for their decisions"). Here, because the hearing officer did not base her decision on any evidence in the record, the Court grants her conclusion little deference.

Instead, the Court considers the context of the 2015 IEP, which required that J.W. practice peer interactions and work on a variety of social and emotional goals. In the absence of any evidence that individual specials could serve those goals, the Court concludes that Barnard was not capable of implementing J.W.'s IEP.

### D. The Timing of the District's Proposal of a Specific School

In addition, Plaintiffs argue that the District denied J.W. a FAPE "by failing to propose an appropriate placement for him" at the IEP meeting—instead, the District waited an additional week before proposing Hearst and Barnard. AR 1066; Pl.'s Mot. at 33–36. The Court concludes that the District adequately permitted Plaintiffs to participate in the site-selection process.

The IDEA requires that "the parents of each child with a disability [be] members of any group that makes decisions on the educational placement of their child." 20 U.S.C. § 1414(e); 34 C.F.R. § 300.327; *see also* 34 C.F.R. § 300.116(a) (requiring that the placement decision be

---

instruction are listed elsewhere on J.W.'s IEP, the Court considers this to be of limited relevance to the question of specials.

made "by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options"). Here, Plaintiffs meet this standard because they were consulted and given the opportunity to participate in selecting a school for J.W. [17] The District communicated with them a week after the IEP meeting and offered them their unimpeded choice of two schools for J.W. to attend. Furthermore, the District selected these schools because it believed they were capable of implementing the IEP, which was developed with Plaintiffs' input. Plaintiffs identify no case law—and this Court is aware of none—holding that the school district must propose locations for services at the precise time of the IEP meeting. Nor does this case involve factual circumstances that could render the Plaintiffs' choice illusory, such as an unreasonable delay. Indeed, other than their suggestion that the delay prevented them from visiting Barnard or Hearst while classes were in session—which this Court rejects[18]—Plaintiffs describe no harm that they suffered from waiting a week. Nor do Plaintiffs identify any alternative, preferable course they would have taken had the choice between Hearst and Barnard been presented to them at the IEP meeting. The Court therefore

---

[17] Plaintiffs extensively discuss the question of whether or not the physical location of services in included in the IDEA's term "educational placement." *See* Pl.'s Mot. at 34–35 (discussing *Eley v. District of Columbia*, 47 F. Supp. 3d 1 (D.D.C. 2014)). However, the Court need not resolve this issue in this case because it finds that the District did include Plaintiffs in the decisionmaking process by offering them two different options within a week of the IEP meeting and before classes began for the year.

[18] The IEP meeting at which Plaintiffs assert the District should have proposed a school occurred on July 22, 2015. AR 631. Schools in the District released for the summer on June 19, 2015. *Revised DCPS Calendar: School Year 2014–2015*, District of Columbia Public Schools, http://dcps.dc.gov/sites/default/files/dc/sites/dcps/publication/attachments/REVISED% 20School%20Year%202014-2015%20Full%20Calendar%20update.pdf; *see also United States v. Philip Morris USA, Inc.*, Civ. No. 99-2496, 2004 WL 5355971, at *1 (D.D.C. Aug. 2, 2004) ("Judicial notice may be taken of historical, political, or statistical facts, or any other facts that are verifiable with certainty."). Thus, the week of delay had no effect on Plaintiffs' ability to observe classes. Plaintiffs do not advance, and this Court does not construct, any argument that J.W. was denied a FAPE because the IEP process itself was completed during the summer when classes could not be observed.

concludes that Plaintiffs were adequately offered the opportunity to participate in J.W.'s placement. *See T.T. v. District of Columbia*, No. 06-0207, 2007 WL 2111032, at *5–6 (D.D.C. July 23, 2007) (finding that the plaintiffs were meaningful participants in the placement decision because the placement was based on the cooperatively developed IEP and the plaintiffs were offered their choice of two schools).

The IEP process is a collaborative one that must address a variety of factors, including "[t]he concerns of the parents for enhancing the education of their child." 34 C.F.R. § 300.324(1)(ii). Schools are required to involve parents at the IEP meeting. *See generally* 34 C.F.R. § 300.322. However, the statute and regulations do not require that the placement be selected at the IEP meeting. Instead, the placement decision must be "based on the child's IEP," 34 C.F.R. § 300.116(b), suggesting that the placement decision can be made after the IEP is finalized. Indeed, using such a two-stage method of placement could enhance the collaborative nature of the IEP process. The current, two-stage model allows the District to hear input from the parents and other stakeholders at the IEP meeting before it considers possible placements. If the District were required to name a placement school at the IEP meeting, the District might be forced to select a school prior to the meeting, limiting the parents' impact on the ultimate decision.

### E. The Educational Advocate's Exclusion from a School Tour

Finally, Plaintiffs appeal the hearing officer's conclusion that the District did not "den[y] the student a FAPE by failing to allow the student's educational advocate to observe the student's proposed placement at [Hearst]." AR 5. The Court reaches the same conclusion as the hearing officer (albeit for a slightly different reason) that no educational harm cognizable under the IDEA occurred because Hearst could not, in any event, have provided J.W. with a FAPE, and the exclusion of the advocate is thus immaterial. *Cf.* AR 613; *see also Kruvant v. District of*

*Columbia*, 99 F. App'x 232, 233 (D.C. Cir. 2004) (holding that "although DCPS admits that it failed to satisfy its responsibility to assess [the student] for IDEA eligibility within 120 days of her parents' request, the [parents] have not shown that any harm resulted from that error" because ultimately the student was not eligible for IDEA services). By reaching this conclusion, however, the Court does not fault the Plaintiffs for raising it as all parties seem to now agree that the advocate should not have been excluded from such a tour.

### F. Current Educational Placement

Plaintiffs request that the Court "[o]rder defendant to place and fund J.W[.] at [KTS] and declare it to be his current educational placement under the IDEA."[19] Compl. at 27. The IDEA's stay-put provision, which provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The school district must pay costs associated with maintaining the student in the current educational placement. *See Eley v. District of Columbia*, 47 F. Supp. 3d 1, 23 (D.D.C. 2014) ([T]he plaintiff's request merely to remain at the same school where he has been receiving instruction for the past four years, at the defendant's expense, is expressly contemplated by the plain text of the IDEA's stay-put provision."). Two elements must be satisfied for the stay-put provision to apply: "(1) proceedings under the IDEA are pending; and (2) prevention of a change in the 'then-current educational placement' of the child is sought." *Id.* at 8 (quoting 20 U.S.C. § 1415(j)).

---

[19] Plaintiffs also extensively discuss the line of cases dealing with whether plaintiffs are entitled to reimbursement for unilateral placement of a student at a non-public school. Pl.'s Mot. at 42–54, ECF No. 16-1. However, because J.W. was already attending KTS at the commencement of this action, the Court more simply addresses these issues through the stay-put provision of the IDEA, as discussed *infra*.

The District does not dispute that proceedings under the IDEA are pending or that KTS is J.W.'s current educational placement. Indeed, the District has already paid for J.W. to attend KTS for the 2015–2016 year during the pendency of this case. Dist.'s Mot. at 15, ECF No. 18. However, the District argues that this Court "need not address reimbursement" because (1) the District will prevail on the merits and (2) the District already paid the 2015–2016 tuition. Dist.'s Mot. at 15. Although the issue of 2015–2016 tuition is moot, because it has already been paid by the District, the Court's determination of J.W.'s current educational placement will affect the District's obligation to pay for J.W.'s attendance at KTS through the resolution of this case and—because the Court concludes that the 2015 IEP did not offer J.W. a FAPE—until the District provides an acceptable IEP. The Court thus considers the question of J.W.'s current educational placement.

Plaintiffs are correct that KTS is J.W.'s current educational placement. The District does not seriously contest that KTS is not J.W.'s current educational placement. "[W]here . . . no IEP has been prepared or implemented, the 'current educational placement' will be the place where the child is actually receiving instruction at the time the dispute arises, provided there has been some sort of administrative determination that the location is appropriate." *Eley v. District of Columbia.*, 47 F. Supp. 3d 1, 17 (D.D.C. 2014) (quoting *District of Columbia v. Oliver*, 991 F. Supp. 2d 209, 214 (D.D.C. 2013)). In this case, J.W. was actually receiving instruction at KTS when the dispute over the 2015 IEP—which had never been implemented—arose. Furthermore, the prior administrative determination that concluded that the *2014* IEP failed to provide J.W. with a FAPE, AR 620, ordered the District to pay for J.W.'s tuition at KTS during the 2014–2015 school year, AR 622, thus representing an administrative determination that KTS was appropriate. Because the District has yet to provide an appropriate IEP, KTS remains J.W.'s

current educational placement. *See Eley*, 47 F. Supp. 3d at 17 (holding that the school that the student had been attending during controversy over the student's most-recent IEP was the student's then-current educational placement).[20]

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (ECF No. 12) is **GRANTED IN PART AND DENIED IN PART**, Defendant's motion for summary judgment (ECF No. 18) is **GRANTED IN PART AND DENIED IN PART**, Plaintiffs' motion to place the case in abeyance (ECF No. 27) is **DENIED AS MOOT**, the parties' motion for supplemental briefing (ECF No. 30) is **DENIED**, and Plaintiffs' motion for supplemental briefing (ECF No. 31) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: May 15, 2017                                     RUDOLPH CONTRERAS
                                                        United States District Judge

---

[20] The Court notes that the gravamen of Plaintiffs' challenge to the July 2015 IEP appeared aimed at maintaining J.W.'s placement at KTS—and that goal has been accomplished through this litigation. Because the Plaintiffs have thus achieved much of their requested relief, the Court discourages the District from arguing for a 50% reduction in Plaintiffs' fee award at the fee petition stage of this litigation. Although Plaintiffs prevailed on only two of their four challenges to the IEP, they have obtained the majority of the relief sought. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 435 n.11, 440 (1983) (rejecting "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" in favor of "award[ing] only that amount of fees that is reasonable in relation to the results obtained."); *A.B. ex rel. Holmes-Ramsey v. District of Columbia*, 19 F. Supp. 3d 201, 209–10 (D.D.C. 2014) ("This is a results-oriented inquiry: 'it is the degree of the plaintiff's success that is the critical factor to the determination of the size of a reasonable fee.'" (quoting *A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 47 (D.D.C. 2012))).